# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN LEE BOYD, JR.,

       **Plaintiff,**

v.                                              **CIVIL ACTION NO. 2:13cv64**
                                              **(Judge Bailey)**

UNITED STATES OF AMERICA;
TERRY O'BRIEN; GILLEY;
POISSONNIER; HELMS; PRICE;
ALLEN; HOSKIN; and STAUFFER,

       **Defendants,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* Plaintiff, John Lee Boyd, Jr., initiated this case on September 11, 2013, by filing a civil rights complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. At the time the Plaintiff filed his complaint, he was incarcerated at FCI Edgefield. However, his complaint involves allegations arising from his incarceration at USP Hazelton. More specifically, the Plaintiff alleges violations of the First, Fourteenth, and Eighth Amendments, as well as a retaliation claim all of which stem from his job assignment at USP Hazelton. On September 30, 2014, the Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment.

On May 13, 2015, former United States Magistrate Judge John S. Kaull conducted a status conference to address the Defendants' pending Motion as well as the Plaintiff's Motion to Compel Discovery. The Court rejected the Plaintiff's assertion that he needed discovery prior to responding to

the Defendants' Motion, but did order the Defendants to provide callout sheets for the period March 2013 through September 2013 that demonstrated who was working in the janitorial services in the area to which the Plaintiff was assigned. In addition, if callout sheets did not exist, counsel for the Defendants was ordered to tender an affidavit setting forth an explanation as to why no callout sheets existed. Finally, the Court directed the Defendants to produce documentation of the pay received by the Plaintiff and others for janitorial work performed during the months of March 2013 through November 2013.

Subsequently, the Plaintiff was granted leave to amend his complaint to set forth what Defendants O'Brien, Gilley, Poissonier, Osborne, Price, Allen, Hoskin and Stauffer did in retaliation and/or in specific conspiratorial acts that supported the Plaintiff's complaint against said Defendants. The amended complaint was filed on July 6, 2013. Subsequently, the Defendants were granted leave to withdraw their previously filed Motion to Dismiss or for Summary Judgment so that their defenses to all of the Plaintiff's claims and allegations could be collectively and simultaneously presented for consideration.

On September 17, 2015, the Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment in response to the Plaintiff's amended complaint. A *Roseboro* Notice was issued on September 2, 2015. On October 19, 2015, the Plaintiff filed a response, which includes a 32 page Memorandum, a 24 page Affidavit, and 146 pages of exhibits.

## II.  The Pleadings

### A.  The Complaint

The Plaintiff's amended complaint raises two claims for relief.  First, the Plaintiff alleges that Defendants Lt. Stauffer and Officer Helms discriminated against him on the basis of race.  More

specifically, the Plaintiff alleges that Officer Helms discriminated against him by "firing" him from his job as a morning-watch orderly and replacing him with white inmates, by refusing to "call him out" for work assignments, and by refusing to pay him for work he had performed. With respect to Lt. Stauffer, the Plaintiff alleges that he was Officer Helms' supervisor at the time, was made aware of the violations but turned a blind eye. The Plaintiff's second allegation is that Defendants, Warden O'Brien, Capt. Gilley, Lt. Poissonier, Officer Osborne, Officer Price, Captain's Secretary Allen, Officer Hoskins and Lt. Stauffer retaliated against him for exercising his First Amendment rights in complaining to prison officials about the racial discrimination demonstrated by Lt. Stauffer and Officer Helms. The Plaintiff appears to allege that the retaliation included failure to pay him for hours that he worked in May of 2013 and failing to call him out on the reassigned day watch detail even though he was scheduled to work. The Plaintiff also alleges that because he filed grievances against Officer Helms and the morning watch detail officers, they were "calling out the Mexicans and paying them instead." ECF No. 125-1 at 27.[1] The Plaintiff alleges that he has been financially, emotionally and psychologically injured due

---

[1]As noted in the procedural history, Magistrate Judge Kaull conducted a status conference and ordered the Defendant to provide callout sheets for the period March 2013, through September 2013, that demonstrated who was working in the janitorial services in the area to which the Plaintiff was assigned. The purpose of requiring the callout sheets was to provide the Plaintiff with documentary evidence that might support his claim that Officer Helms was not calling the Plaintiff to work when scheduled and was calling out the "Mexicans" instead. The Defendants supplied 58 pages of callout sheets, which list the time and location for inmates who have scheduled appointments with staff, to include medical, dental and educational appointments. These sheets do not demonstrate who was working janitorial services at any given time, and according to the affidavit filed by Officer Helms, there would be no callouts demonstrating who was working in the janitorial services on the unit. ECF No. 119 at 2. The Plaintiff correctly notes that the callout sheets list the inmate's current and daily work assignment. The Plaintiff argues that he needed the March through September 2013 callout sheets to show that his work detail was listed as morning watch and to establish that he was not being paid or called out to do his assigned job. The undersigned acknowledges that the callout sheets tendered are for May 1, 2012. However, it is clear that even if the Defendants were directed to supplement this filing with the callout sheets for every day during March to September 2013, they would not establish anything with respect to the Plaintiff other than those days when he was not at his assigned work detail because he had been "called out" for a

to the malicious, discriminatory and retaliatory conduct of the Defendants. For relief, he seeks $250,00 in compensatory, punitive and nominal damages from each defendant in their individual capacity for a total of $2,250,000.

**B.  The Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment**

In support of their motions, the Defendants allege:

1. The Plaintiff has failed to exhaust his administrative remedies with respect to his claim that the Defendants retaliated against him in violation of his constitutional rights;

2.  The Plaintiff failed to demonstrate personal involvement on the part of the Defendants, O'Brien, Gilley, Poissonnier, Osborne, Price, Allen, Hoskin and Stauffer sufficient to sustain <u>Bivens</u> liability;

3. The Plaintiff has failed to demonstrate that he was discriminated against on the basis of his race or that his job reassignment violated any of his constitutional rights;

4. The Plaintiff's retaliation allegations fail to state a claim upon which relief can be granted; and

5. The Defendants are entitled to qualified immunity.

**C.  The Plaintiff's Response**

In response to the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, the Plaintiff first contends that there is a genuine issue as to whether the Defendants hindered his ability to exhaust his administrative remedies with respect to his retaliation claim. In addition, the Plaintiff alleges that there is a genuine issue as to whether Officer Helms demonstrated racial discrimination

---

scheduled appoint, and they clearly would not provide proof that he was not being allowed to work his scheduled shifts.

when he fired him from the corridor detail midnight shift[2] and placed him on the outside compound day shift, hired two Caucasian inmates to work the midnight shift and refused to submit his pay for the month of June 2012. The Plaintiff also alleges that the Defendants are not entitled to qualified immunity because by the year 2014, it was clear that the 14th Amendment prohibited racial discrimination in job assignments, and the 1st Amendment prohibited prison officials from harassing and retaliating against him for filing grievances.

## D. **The Defendants' Reply**

In their reply, the Defendants again assert that the Plaintiff failed to exhaust his administrative remedies with respect to any claim that the Defendants retaliated against him nor any claim against any defendant other than Helms. In addition, the Defendants assert that the Plaintiff has failed to demonstrate any personal involvement on the part of Defendants O'Brien, Gilley, Poissonnier, Osborne, Allen, Hoskin or Stauffer.

## III. **Standard of Review**

## A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

---

[2]It is unclear why the Plaintiff refers to the midnight shift in his reply. However, it appears clear that the shift in question is the "morning watch detail."

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.  Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary

7

judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. Factual Background

The Plaintiff was convicted in the Eastern District of North Carolina and was sentenced on April 11, 1994, to a 360-month term of incarceration. On July 7, 2015, his sentence was reduced pursuant to 18 U.S.C. § 3582(c)(2) to a term of 289 months. He was released from incarceration on October 20, 2015, and currently resides in New York. He is subject to a five-year period of supervised release.

When the Plaintiff initiated this case, he was incarcerated at FCI Edgefield. Prior to transferring to FCI Edgefield, he was incarcerated at USP Hazelton from February 21, 2008, until January 14, 2014. The incidents alleged by the Plaintiff in this proceeding occurred at USP Hazelton.

While at USP Hazelton, the Plaintiff was assigned to work as a morning-watch orderly from September 26, 2011, through June 23, 2012. Orderlies are responsible for cleaning and waxing the floors of the institution. Morning-watch orderlies generally work from 10:00 p.m. until 3:00 a.m. In June of 2012, the Plaintiff was switched from the morning-watch to the day-watch detail. Officer Helms, who served as the morning-watch Compound Officer from March 3, 2012, to September 11, 2012, is the officer who switched the Plaintiff from the morning-watch to the day-watch. It is this switch that is at the center of the Plaintiff's complaint.

The Plaintiff alleges that Officer Helms "fired" him from the morning-watch because he did not want to work with black inmates. In support of this allegation, he notes that he and his co-worker, who is also black, were replaced by white inmates. Conversely, Officer Helms alleges that he switched the Plaintiff because he had been the morning-watch orderly for approximately nine months, which raised potential security concerns. More specifically, Officer Helms indicates that he observed that the

Plaintiff had become too familiar with the staff, the workings of the corridor, and with which officers were carrying which specific keys. Therefore, Officer Helms contends that the decision to reassign the Plaintiff was based solely on these security concerns and had nothing to do with his race. In addition, although acknowledging that he hired two Caucasian inmates to replace the Plaintiff and his co-worker for the morning-watch detail, Officer Helms indicates that the sole reason for doing so was because they were two first two inmates to ask about the job. In addition, during the time period Officer Helms served as the Morning Watch Compound Officer, he worked a weekly double shift as the evening-watch Compound Officer, during which time he supervised several black inmates who worked as orderlies on that watch.

On November 13, 2012, the Plaintiff was reassigned to the morning watch detail.. ECF No. 140-2. At that time, Officer Helms was no longer working as the morning-watch officer, and he had no knowledge or input into the decision to reassign the Plaintiff back to the morning-watch position.

## V. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See

---

[3] Porter v. Nussle, 534 U.S. 516, 524 (2002).

<u>Porter v. Nussle</u>, 534 U.S. at 524 (citing <u>Booth</u>, 532 U.S. at 741) (emphasis added).

Moreover, in <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." <u>Woodford</u>, 548 U.S. at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. <u>Id.</u> at 103.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). <u>See</u> 28 C.F.R. § 542.10, <u>et seq.</u> If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has fully completed each level of the process. 28 C.F.R.§ 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D. Md. 1997).

In their pending Motion to Dismiss or for Summary Judgment, the Defendants allege that the Plaintiff has failed to exhaust his administrative remedies that any of them retaliated against him

for filing administrative remedies. The records supplied by both the Plaintiff and the Defendants establish that the Plaintiff filed two remedy requests that are related to the issues in his amended complaint.

### 1. Administrative Remedy ID #711982

On July 5, 2012, the Plaintiff submitted a BP-8[4] "Request for Administrative Remedies Informal Resolution Form" requesting that Officer Cody Helms be fired for his practice of racial discrimination and further, that he be compensated $96.00 for the paycheck he had not received because Officer Helms had refused to submit the paperwork requesting payment and be given back his job on the morning watch detail. ECF No. 1-1 at 1-2.[5]

On October 3, 2012, the Plaintiff filed a BP-9, stamped as received by the institution on November 11, 2012, stating that his previously filed BP-8 had not been acted upon and requesting that "all issues [and] arguments from the BP-8 be incorporated into the BP- 9." ECF No. 1 at 4. On November 22, 2012, this remedy request was rejected by the Administrative Remedy Coordinator at USP Hazelton because the Plaintiff had failed to provide specific information regarding the complaint. Id. at 5. The Plaintiff was instructed that he must resubmit the request on a BP-9 form and provide more specific information about his request/appeal. Id.

On December 3, 2012, the Plaintiff re-submitted this request by filing a second BP-9 at the

---

[4]This is the informal resolution procedure which precedes the three level administrative remedy process.

[5]The Plaintiff did not attach his administrative grievances to his Amended Complaint. However, in addition to attaching them as exhibits to his original complaint, he has also attached them to his Response to the Defendants' original Motion to Dismiss or, in the alternative, Motion for Summary Judgment and to the Response to the Defendants' Motion to Dismiss or, in the alternative Motion for Summary Judgment filed with respect to the Amended Complaint.

institutional level to which he attached an affidavit alleging racial discrimination by Officer Helms, including taking his job without justification, hiring two white inmates in his place and failing to submit his paysheet for the month of June 2012. ECF No. 1-1 at 8.

On December 2, 2012, Warden O'Brien responded to the Plaintiff's Remedy Request # 71982-F2[6] and advised the Plaintiff that all allegations of staff misconduct are taken very seriously. Warden O'Brien further advised the Plaintiff that the matter had been deferred [sic] to the appropriate department for review. However, because of the sensitive nature of the Plaintiff's allegations, some aspects of the findings might not be disclosable. Finally, the Plaintiff was advised that if he was dissatisfied with the response, he could appeal to the Mid-Atlantic Regional Director. ECF No. 1-1 at 9.

On December 19, 2012, the Plaintiff appealed the institutional decision to the Regional Office by filing a BP-10. The sole complaint raised was racial discrimination by Officer Helms. The BP-10 was received on December 23, 2012, and was denied on January 30, 2013. In denying the remedy, the Regional Office noted that the Warden had adequately addressed the issues raised and review of the claim had failed to substantiate the Plaintiff's allegation that he was subjected to discrimination. The denial further noted that the Plaintiff did not provide, nor did the Regional Office find, any evidence of discrimination or that staff actions were not in accordance with policy and established procedures. The Plaintiff was then informed that if he was dissatisfied, he could appeal to the General Counsel within thirty days. ECF No. 1-1 at 11.

The Plaintiff did appeal to the Central Office by filing a BP-11, which was received on

---

[6]The Remedy ID remains the same at each level of the process. The letter following the ID indicates the level of the process, i.e. "F" indicates that it is the BP-9 filed at the facility or institution. The numeral "2" following the letter, indicates that it is the second filing at that level.

February 26, 2013. ECF No. 147-11 at 3. On September 23, 2013, the Central Office responded to the appeal and noted that "[d]ue to the nature of your allegations this matter has been forwarded to the appropriate component of the Bureau of Prisons for further review. The Administrative Remedy Program does not provide for monetary relief. Your request for monetary compensation should be pursued through the appropriate statutorily mandated procedure to resolve this issue. Accordingly, this response is provided for informational purposes only." Id. at 7.

**2. Administrative Remedy ID #715801**

On August 16, 2012, the Plaintiff filed a BP-8 "Request for Administrative Remedies Informal Resolution Form." He attached an affidavit to the form in which he stated that his complaint was based upon "'Retaliation' in violation of the Federal Constitution's 1st, 8th, and 14th Amendment by USP-Hazelton's Officer Helms and co-worker's." ECF No.1-1 at 13. The Plaintiff specifically noted that Officer Helms violated his right under the 8th Amendment because he deliberately paid him $19.00 as a punishment for exercising his right to file a grievance against him for racial discrimination. The Plaintiff also complained that Officer Helms used abusive and disrespectful language including the word nigger.[7] Id.

On October 3, 2012, the Plaintiff filed a BP-9, which was virtually identical to the October BP-9 that he filed in Administrative Remedy ID #711982. The Plaintiff noted that it had been over

---

[7] Name-calling alone cannot form the basis of a constitutional violation because a person has no liberty interest at stake. Numerous courts around the country have held that "even the most abusive verbal attacks do not violate the constitution." Oltarzewski v. Reggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. § 1983. Pierce v. King, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997), cert. granted and judmt. vacated on other grounds, 525 U.S. 802 (1998). Likewise, racial epithets do implicate constitutional rights because, "no matter how abhorrent or reprehensible" a racial epithet may be, it cannot itself form the basis of a civil rights claim. See Wade v. Fisk, 176 A.D.2d 1087, 1089, 575 NYS.2d 494, ___ (1991).

30 days, and he had not received a response to his BP-8. Accordingly, the Plaintiff indicated that he was filing his BP-9 and asserted that "this Complaint still stands and ask that all issues, arguments mentioned in his attached BP-8 and relief requested sought be incorporated into his BP-9." ECF No. 1-1 at 16. The BP-9 was rejected by the Administrative Remedy Clerk at USP Hazelton on December 17, 2012, due to the previous filing of Remedy ID #711982-F1 and because there was no evidence that the circumstances had changed warranting a different response. ECF No. 1-1 at 17.

The Plaintiff sought to appeal the rejection by filing a BP-10, which was received by the Regional Office on December 27, 2012. The Plaintiff stated that Administrative Remedy ID #711982 "DISCRIMINATION COMPLAINT" was different from the instant "RETALIATION COMPLAIN" [sic]. ECF No. 1-1 at 19. On January 30, 2013, the appeal was closed as repetitive because it raised the same allegations and sought the same relief as Administrative Remedy ID #711982. Id. at 21.

The Plaintiff appealed this decision to the Central office, where it was received on February 26, 2013. The Plaintiff was advised that if did not receive a response within the time allotted for reply, including extension, he could consider the absence of a response to be a denial. ECF No. 1-1 at 22.The Plaintiff did not receive a response.

It is clear from the history recited above that the Plaintiff exhausted his administrative grievance with respect to his claim that Officer Helms discriminated against him on the basis of race with respect to his job transfer and failure to submit his pay for June of 2012.[8] However, to the

---

[8]Although the Plaintiff alleged in his complaint that Lt. Stauffer was also culpable in the racial discrimination, because he was aware of Officer Helm's actions but turned a blind eye, he did not name Lt. Stauffer, and therefore he has not exhausted his administrative grievances with respect to Lt. Stauffer.

extent that the Plaintiff exhausted his administrative grievances with respect to retaliation, it is clear that this claim is only exhausted with respect to Officer Helms. Nowhere in the affidavit attached to his BP-8 did he name any other specific individual, but only referred to Officer Helms' co-workers. Moreover, the Plaintiff's pending amended complaint alleges that the retaliation occurred during the period July 6, 2012, through January 14, 2014.[9] Because the Plaintiff's BP-9 regarding retaliation was filed on October 3, 2012, it is clear that none of the Plaintiff claims regarding retaliation which occurred after that date could be exhausted, because they postdate the initiation of the grievance process.

The Court acknowledges that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant

---

[9]For instance, the Plaintiff alleges that on November 8, 2013, after he filed his federal complaint, the Defendants subjected him to an unwarranted and inapplicable punishment of maintenance pay which is $5.25, which he maintains is reserved as punishment for violations of the "Bureau of Prisons." ECF No. 125-1. Not only could this claim not have been exhausted, but the Inmate Work and Performance Pay regulations provide that "Maintenance Pay may be used as temporary compensation for inmates who perform satisfactorily but are assigned to work details that have an excessive number of inmate positions due to overcrowded condition."Program Statement 5251.06 at 8 available on PACER. In addition, the Plaintiff alleges that many of the complained of actions were taken in retaliation for his filing grievances against Officer Helms, including failing to pay him for work performed and failing to call him out for work when scheduled, and instead, calling out Mexican inmates. In order to state a claim of retaliation in the context of a prison, an inmate "must allege either that the retaliatory act was taken in response to the exercise of a constitutional right, or that the retaliatory act violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). The law is well established that prisoners do not have a constitutional right to the administrative grievance process. Adams at 75. Therefore, "[a] plaintiff has no constitutionally protected right to participate in grievance procedures," and "therefore, to the extent that the Plaintiff alleges that he was retaliated against for filing of administrative remedies, " such a claim should be dismissed." Id.; Rodriguez v. Mellady, 2013 WL 1561123 (N.D.W.Va.) At *3 (internal citations omitted).

may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of official's failure to provide him with the necessary appeal forms.

In his Response, the Plaintiff alleges that the Defendants "hindered his ability to exhaust administrative remedies." ECF No. 147 at 7. In support of this allegation, the Plaintiff maintains that: (1) he filed BP-8 forms; (2) the institution failed to respond to the BP-8 form, but then rejected his BP-9 request No. 715801 because it did not state the words "retaliation claim" and was interpreted as the same BP-9 request as set forth in No. 111982[10] "racial discrimination claim;" (3) he filed a BP-10 form with the regional office, and the regional director closed the BP-10 as repetitive to No. 711981; ( 4) he filed a BP-11 and the Central Office failed to respond to the merits within the time allotted, including extensions. The Plaintiff contends that the history associated with Remedy ID No. 715801 clearly show that he was attempting to exhaust his administrative remedies, but his efforts were obstructed at USP Hazelton and therefore, he should be allowed to proceed to trial. Id. at 7-9.

Nothing proffered by the Plaintiff indicates that any BOP official refused to give him administrative remedy forms or in anyway hindered his use of the forms. The fact that there was

---

[10] Although the Plaintiff refers to Administrative Remedy ID No. 111982 at various points, it appears to be a simple typographical error, and he in fact means 711982.

no response to his BP-8 did not prevent him from thereafter filing a BP-9, BP-10, or BP-11. The Defendants acknowledge that the forms were filed. Moreover, the fact that the BOP construed Remedy ID No. 715801 as raising the same racial discrimination claim as that raised in Remedy ID No. 711982 is not what leads the undersigned to his conclusion that the Plaintiff did not exhaust his administrative remedies regarding retaliation against any defendant other than Officer Helms. Rather, it is the simple fact that the Plaintiff never identified any other BOP employee by name or position. Accordingly, because the Plaintiff did not exhaust any administrative grievance with regard to defendants other than Officer Helms, his complaint against Terry O'Brien, Gilley, Poissonnier, Helms, Osborne, Price, Allen, Hoskin, and Stauffer should be dismissed without prejudice for failure to exhaust his administrative remedies.

**B. Racial Discrimination**

As previously stated, the Plaintiff alleges that Officer Helms discriminated against him by "firing" him from his position as a morning-watch orderly because he was black and Officer Helms did not want black inmates working under his supervision. In addition, the Plaintiff alleges that he was denied his pay for June of 2012 and was not called out to work when scheduled.

The Plaintiff has no constitutional right to a job while incarcerated because a federal prisoner has no property or liberty interest to a job in prison. See Garza v. Miller, 688 F.2d 480 (7th Cir. 1982). However, if a prison program is offered, no prisoner may be treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." Brown v. Summer, 701 F. Supp. 762, 764 (D. Nev. 1988). Therefore, an inmate may have equal protection claim if he can prove that a job assignment was made on the basis of race.

To succeed on an equal protection claim, a prisoner must show that he was treated differently

17

from others with whom he was similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v Garraghty, 239 F.3d 658, 654 (4th Cir. 2001). In order to meet this requirement, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive. Williams v. Hanson 326 F.3d 569, 584 (4th Cir. 2003).

To survive summary judgment on an equal protection claim, the Plaintiff must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Cawford-El v. Britton, 523 U.S. 574, 600 (1998). Determining whether an invidious discriminatory purpose was a motivating factor demands an inquiry into such circumstantial evidence and direct evidence as may be available. Among the factors that a court may look to are the sequence of events leading up to the challenged decision, and in particular, any departure from the normal procedural sequence or substantive departures. Hollingsworth v. Wagoner, 919 F.2d 139, at *1, (Table) (4th Cir. 1990) (citing Hollingsworth v. Wagoner, 919 F.2d 139, at *2, (Table) (4th Cir. 1990)).

Reviewing the allegations in the complaint, it is clear that the Plaintiff has failed to present affirmative evidence that he was treated differently from other inmates assigned to the same job, and more importantly, that the actions of Officer Helms were the result of intentional or purposeful discrimination. The Plaintiff's unsupported allegation that Officer Helms said he did not want to work with black inmate is expressly refuted by Officer Helms, and he has articulated a non-discriminatory reason for his decision to change the Plaintiff's shift, specifically, a valid security concern. As noted by both Officer Helms and Captain Gilmore, it is a common and recognized practice to rotate inmates to different job assignments to prevent over-familiarity with certain areas and with the staff with whom they work. All inmates who hold prison jobs are accordingly subject to reassignment or removal at all

times on this basis.[11] ECF Nos. 140-2 at 2, 140-3 at 2. Furthermore, the Plaintiff was not removed from his job, but instead, was transferred to the same job during a different shift. In addition, Officer Helms became the Plaintiff's supervisor in March of 2012, but did not transfer the Plaintiff until three months later in June of 2012. If Officer Helms could not tolerate supervising black inmates, it does not seem logical that he would wait three months before switching the Plaintiff's shift. Finally, it bears repeating that Officer Helms worked a weekly double shift as the evening-compound Officer, during which time he supervised several black inmate who worked as orderlies. ECF No. 140-2 at 3.

With respect to the issue of the Plaintiff's pay, Officer Helms states that he did submit a pay sheet for the Plaintiff for the month of June, and the Plaintiff acknowledges that he was, in fact paid for June. ECF No. 125-1 at 12. While it appears that the $96 in dispute for the month of June 2012, may not have been paid until September 2012 [ECF No. 118-1 at 2], there is absolutely no substantiated evidence that the delay was racially motivated. As noted by Karen McNair, the Regional Trust Fund Administrator in the Mid Atlantic Regional Office of the BOP, pay can be delayed to an inmate for a number of reasons, including administrative errors. ECF No. 118 at 2.

---

[11]The Plaintiff disputes that there is any policy that requires an inmate to be transferred to another position after nine months, and it would appear there is no such definitive policy. Rather, decisions regarding inmate job assignments are the type of day-to-day judgments that rest firmly in the discretion of prison officials. In addition, the Plaintiff has provided the Court with Program Statement Number 5510.13, Posted Picture File. ECF No. 147-14. The purposes of this Program Statement is to implement a Posted Picture File (PPF) of inmates or detainees who are: (1) Potentially Disruptive; (2) Escape Risks; or (3) Present a threat to staff or institution security. Although not specifically articulated, the undersigned assumes that the Plaintiff is arguing that because his picture is not in the PPF file, he could not be transferred from his job as a security threat. The undersigned finds the Plaintiff's argument unavailing as Officer Helms indicated only that the Plaintiff's continued presence on the day-watch posed a valid security concern. Program Statement 5510.13 is meant to identify "inmates or detainees who, because of prior record, offense, institution adjustment, other factors, pose a significant threat to inmate or staff safety, the institution security, or the surrounding community welfare. ECF No. 147-14 at 1. Furthermore, the criteria for placing an inmate on the PPF are set forth in the Program Statement, and the Plaintiff clearly does not meet the criteria. Id. at 2-4.

Finally, the Plaintiff's assertion that Captain Gilmore "look[ed] into" his racial discrimination claim against Officer Helms and found that the Plaintiff "was right" and further that he gave him back his morning-watch detail jobs" is expressly refuted by Captain Gilmore. In his Declaration, Captain Gilmore states:

> I expressly deny that I ever "looked into" any complaint by the plaintiff that Officer Helms acted unprofessionally, or in a racially discriminatory manner, with respect to reassigning him to a different watch detail. Further, I deny that I reinstated Inmate Boyd to his job as morning-watch orderly because I 'found' that he 'was right' in his claims of racial discrimination. Supervisory officers are responsible for the hiring or removal of inmates in their departments. While these officers were free to consult with me regarding their decisions, it was not mandatory that they do so.
>
> I have no independent recollection of Inmate Boyd's work assignments or of being consulted prior to the time he was reassigned back to the morning-watch orderly detail. The decision to return him to his morning watch position was most likely made by the Morning Watch Supervisor working in November 2012.

ECF No. 140-3 at 2.

## VI. <u>RECOMMENDATION</u>

In consideration of the foregoing, it is the undersigned's recommendation that the Defendants' Motion to Dismiss, on in the Alternative, for Summary Judgment [ECF No. 139] be **GRANTED**, and the Plaintiff's Amended Complaint {ECF No. 125-1] be **DENIED WITH PREJUDICE** with respect to his claims against Officer Helms for failure to state a claim upon which relief can be granted and be **DENIED WITHOUT PREJUDICE** against the remaining Defendants for failure to exhaust administrative remedies.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such

objections should also be submitted to the Honorable John Preston Bailey, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 20, 2016.


/s Michael John Aloi
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE