IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**JOHN LEE BOYD, JR.**,

    Plaintiff,

v.
                                                                 CIVIL ACTION NO. 2:13-CV-64
                                                                 (BAILEY)

**UNITED STATES OF AMERICA**,
**TERRY O'BRIEN**, Warden of USP-Hazelton,
**GILLEY**, Captain of USP-Hazelton,
**POISSONNIER**, Lieutenant of USP-Hazelton,
**OSBORNE**, No. 2 Morning Watch Correctional Officer,
**HELMS**, No. 1 Morning Watch Correctional Officer,
**PRICE**, No. 1 Morning Watch Correctional Officer,
**ALLEN**, Captain's Secretary,
**HOSKIN**, No. 1 Morning Watch Correctional Officer, **and**
**STAUFFER**, Lieutenant of USP-Hazelton,

    Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge Michael J. Aloi [Doc. 163]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Aloi for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Aloi filed his R&R on May 20, 2016. In that filing, the magistrate judge recommended that this Court grant Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. 139], and dismiss plaintiff's Amended Complaint [Doc. 125-1] with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is timely

1

made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Farmer v. McBride**, 177 Fed.Appx. 327, 330-331 (4th Cir. 2006); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Aloi's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiff timely filed his Objections [Doc. 165] on June 10, 2016. Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which plaintiff objects. The remainder of the R&R will be reviewed for clear error.

I. **Background**

Plaintiff John Lee Boyd, Jr. ("Boyd" or "plaintiff"), is a former federal prisoner who was convicted of possession with intent to distribute and distribution of cocaine in the Eastern District of North Carolina [Doc. 58-2; E.D. N.C., 5:93-cr-123-3, Doc. 92]. Boyd was sentenced to a 360-month term of incarceration on April 11, 1994, but that sentence was reduced to a term of 289 months, pursuant to 18 U.S.C. § 3582(c)(2), on July 7, 2015 [Id.; E.D. N.C., 5:93-cr-123-3, Doc. 196]. He was released from incarceration on October 20, 2015, and is subject to a five-year period of supervised release [Doc. 58-2]. He now resides in the State of New York [Doc. 162].

Boyd initiated this case on September 11, 2013, by filing a civil rights complaint

against the above-named defendants pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) [Doc. 1]. Plaintiff effectively filed an Amended Complaint [Doc. 125-1] on July 13, 2015.[1] The incidents at the center of Boyd's Complaint allegedly occurred while he was incarcerated at USP Hazelton. Between September 26, 2011, and June 23, 2012, Boyd was assigned to work as a morning-watch orderly [Doc. 140-2]. Officer Cody Helms, who served as the morning-watch Compound Officer during that time, notes that as a morning-watch orderly, Boyd was responsible for cleaning and waxing the floors of the institution, and generally worked from 10:00 p.m. until 3:00 a.m daily [Id.]. Boyd alleges that in June of 2012, Officer Helms "fired" him from the morning-watch because "he did not want any black [inmates] out working on his detail" [Doc. 125-1 at 10]; however, Boyd himself indicates that he was not explicitly fired, but was instead switched from the morning-watch to the "day-watch compound detail" [Doc. 165 at 8]. It is this switch that is at the center of the Boyd's Complaint.

Boyd, again, alleges that the switch was racially motivated, and Officer Helms discriminated against him by "firing" him from his job as a morning-watch orderly and replacing him with white inmates, by refusing to "call him out" for work assignments, and by refusing to pay him for work he had performed [Doc. 125-1 at 10]. In support of the allegation, he notes that he and his co-worker, who is also black, were replaced by white

---

[1] This Court notes that plaintiff filed a Motion to Amend the Complaint [Doc. 125] on July 6, 2015, and attached a Proposed Amended Complaint [Doc. 125-1] to that Motion. By Order dated July 13, 2015, this Court granted the Motion to Amend [Doc. 129], but the Amended Complaint was not refiled. Accordingly, plaintiff's Proposed Amended Complaint was effectively adopted as an Amended Complaint and filed on the date of that Order.

3

inmates [Id.]. Boyd alleges that Lt. Stauffer, who was Officer Helms' supervisor at the time, was made aware of the purported violations but turned a blind eye to them [Id. at 11]. Boyd's second allegation is that defendants Warden O'Brien, Capt. Gilley, Lt. Poissonier, Officer Osborne, Officer Price, Captain's Secretary Allen, Officer Hoskins, and Lt. Stauffer all retaliated against him for complaining to prison officials about the racial discrimination allegedly demonstrated by Lt. Stauffer and Officer Helms [Id. at 14-28]. Boyd alleges that the officers retaliated against him by not paying him for hours that he worked as a morning-watch orderly, and that staffers failed to "call him out" to work on scheduled shifts at the reassigned day watch detail [Id.]. He also alleges that because he filed grievances against Officer Helms and the morning watch detail officers, they were "calling out the Mexicans and paying them instead" [Id. at 28]. As a result, Boyd claims that his First, Fourteenth, and Eighth Amendment rights were violated, and he has been financially, emotionally and psychologically injured due to his job assignment switch at USP Hazelton [Id. at 22-29].

On September 30, 2014, defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment [Doc. 57]. Boyd filed a Response [Doc. 69] to the Motion on October 17, 2014. After Boyd filed a Motion to Compel regarding discovery issues on December 3, 2014 [Doc. 94], former United States Magistrate Judge John S. Kaull conducted a status conference to address the defendants' pending Motion as well as the Motion to Compel on May 13, 2015 [Doc. 109]. There, Magistrate Judge Kaull rejected plaintiff's assertion that he needed discovery prior to responding to defendants' Motion to Dismiss, but did order the defendants to provide callout sheets for the period of March 2013 through September 2013, which would purportedly demonstrate who was working in the janitorial services in the area to which the Boyd was assigned [Doc. 115]. In addition, if

4

callout sheets did not exist, counsel for defendants was ordered to tender an affidavit setting forth an explanation as to why no callout sheets existed [Id.]. Finally, the Court directed defendants to produce documentation of the pay received by Boyd and others for janitorial work performed during the months of March 2013 through November 2013 [Id.]. As noted above, plaintiff effectively filed his Amended Complaint in the aftermath of the Status Conference rulings [Doc. 129]. Subsequently, defendants were granted leave to withdraw their previously filed Motion to Dismiss or for Summary Judgment so that their defenses to all of the plaintiff's claims and allegations could be collectively and simultaneously presented for consideration [Id.].

On September 17, 2015, defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment in response to the plaintiff's Amended Complaint [Doc. 139]. A **Roseboro** Notice was issued on September 22, 2015 [Doc. 142]. On October 19, 2015, the plaintiff filed a response, which includes a 32 page Memorandum, a 24 page Affidavit, and 146 pages of exhibits [Doc. 147]. The instant R&R and Boyd's Objections followed.

II. <u>**Legal Standard**</u>

**A. Motion to Dismiss:**

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most

5

favorable to the plaintiffs. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. See *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id*. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

**B. Summary Judgment:**

Fed. R. Civ. P. 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in *Anderson*, "Rule 56(e) itself

provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also* **Charbonnages de France v. Smith**, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing **Stevens v. Howard D. Johnson Co.**, 181 F.2d 390, 394 (4th Cir. 1950)). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See* **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

III. <u>Analysis</u>

Before addressing the points raised in plaintiff's Objection, this Court must first

clarify that, throughout his Objections [Doc. 165], plaintiff attempts to "incorporate by reference" various other pleadings that he has filed in this matter. For example, in discussing whether a genuine issue of material fact exists as to whether Officer Helms discriminated against him by "firing" him, Boyd states, in part, that his response to the Government's position was:

> "litigated in plaintiff's response in opposition to defendant's memorandum in support of motion to dismiss, or in the alternative, for summary judgment . . . [and is] hereincorporated herein and clearly amount to a genuine issue of dispute of material fact for determination of a jury trial."

[Doc. 165 at 4]. Later in his Objections, he also states:

> "The Plaintiff contend[s] that this issue ha[s] been address[ed] in plaintiff's response to defendants['] motion to dismiss, or in the alternative, for sumary judgment . . . the plaintiff respectfully ask[s] the Hon. Court to reincorporate Plaintiff's response affidavit and exhibits into the plaintiff's objection to the [R&R] . . .."[2]

However, the Magistrate Judge has already contemplated the various arguments which plaintiff intends to "incorporate by reference." Indeed, the notion that plaintiff can simply "incorporate by reference" arguments previously raised and contemplated by the R&R would render the referral to the magistrate judge and the R&R moot. As such, this Court declines to consider those points which petitioner attempts to "incorporate by reference," and instead will only review the portions of the R&R to which Boyd has actually objected.

---

[2] In this particular passage, plaintiff also cites to **TFWS, Inc. v. Franchot**, 572 F.3d 186, 194 (4th Cir. 2009), seemingly in an attempt to invoke the "Law of the Case Doctrine." This "doctrine 'posits that, when a court decides upon rule of law, that decision should continue to govern same issues in subsequent stages of same case.'" **Id.** at 191. However, that doctrine cannot be applied here, as plaintiff seeks to apply it not to rulings of this Court, but instead to legal arguments that he has raised previously. Accordingly, plaintiff's argument on this issue is meritless.

*See* 28 U.S.C. § 636(b)(1)(c). Accordingly, this Court will now turn to those portions of the R&R to which petitioner has actually objected.

> **A.** **Plaintiff's Racial Discrimination Claims as to Officer Helms Fail As Plaintiff Has Not Affirmatively Demonstrated That His "Firing" Was Racially Motivated or Otherwise Wrongful, Nor Was He Wrongfully Denied Compensation**:

As noted above, Boyd alleges that Officer Helms discriminated against him by "firing" him from his position as a morning-watch orderly, and did so because Boyd is black [Doc. 125-1 at 10-11].[3] He further claims that Officer Helms expressly stated that he "did not want black inmates out working on his detail" [Id. at 10]. In addition, plaintiff alleges that Officer Helms, "refuse[d] to submit plaintiff's pay sheet to the [Captain's] Secretary so that he wouldn't be paid for the work he did the past month without any justification or reasons in which officer Helms took away plaintiff['s] job and gave it to two caucasion [sic] because plaintiff is 'BLACK'" [Id.]. This action, in turn, allegedly caused Boyd to be denied pay for morning watch orderly work in June of 2012 [Id.]. The R&R concludes, in part, that "plaintiff has failed to present affirmative evidence that he was treated differently from other inmates assigned to the same job, and more importantly, that the actions of Officer Helms were the result of intentional or purposeful discrimination" [Doc. 163 at 18]. In his objections, plaintiff

---

[3] As will be discussed later in this opinion, the Prison Litigation Reform Act of 1995 ("PLRA") mandates that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The R&R extensively outlines the steps that plaintiff has taken to effectuate exhausting these remedies [Doc. 163 at 9-14]. Upon review, this Court is also satisfied that plaintiff has exhausted the necessary administrative remedies as to his claim that Officer Helms discriminated against him on the basis of race with respect to his job transfer and failure to submit pay for June 2012. Accordingly, the same does not bear recitation here, and this Court will extensively analyze only plaintiff's substantive claims against Officer Helms.

9

effectively reiterates the allegations set forth in the Complaint, and states:

> "The plaintiff first objects that Helms did not switch plaintiff's job but did fire him as a morning watch corridor orderly and changed plaintiff['s] to a[n] outsider compound work detail[,] which is distinguish[ed] to day-watch compound detail in regard to the work done or the pay an inmate receive[s] and also contend[s] that if, in fact, the plaintiff was in with his co-worker Torrence Gillis[,] he would have given plai[n]tiff an [affidavit] stating that he himself had worked on the morning-watch detail for over "2" years which is not logical for the defendants to say plaintiff was on the morning watch detail for nine months which cause concerns of security and because plaintiff was not allow[ed] to do interrogatories althoug[h] they were submitted to the defendants but then ordered by the Court to not answer such, clearly is a violation of plaintiffs rights under Fed. R. Civ. P. 56(C)(1)."[4]

[Doc. 165]. Plaintiff further contends that this issue was, "address[ed] in [his] Response," which, as noted above, is inconsequential for the purposes of his objection to the R&R.

First, this Court begins with the principle that "prison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate." ***Johnson v. Knable***, 862 F.2d 314 (Table), 1988 WL 119136 at *1 (4th Cir. 1988). This Court has previously held that, "there is no constitutional right supporting any claim that a prisoner has a right to any job." ***Boyles v. West Virginia Div. of Corrections***, 2013 WL 5728143 (N.D. W.Va. Oct. 22, 2013) (Stamp, J.) (citing ***James v. Quinlan***, 866 F.2d 627, 630 (4th Cir. 1989) (finding that a prisoner has no liberty interest in a prison job assignment)). Additionally, a federal prisoner has "no property or liberty interest in prison employment" while incarcerated. See ***Garza v. Miller***, 688 F.2d 480, 485 (7th Cir. 1982); see also ***Williams v. Farrior***, 334 F.Supp.2d 898, 904 (E.D. Va. Sept. 7, 2004). However, if a prison program is offered, no prisoner may be

---

[4] Long, rambling, and often incoherent sentences akin to the one transcribed here are rife throughout plaintiff's sixteen page, handwritten objections.

treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." ***Brown v. Summer***, 701 F.Supp. 762, 764 (D. Nev. 1988); *see also **Johnson***, 862 F.2d 314 (holding that if an inmate was denied a prison work assignment simply because of his sexual orientation, his equal protection rights may have been violated). Therefore, an inmate may have an equal protection claim if he can prove that a job assignment decision was made on the basis of race.

The Fourth Circuit has held that to succeed on an equal protection claim, a plaintiff must show that he was treated differently from others with whom he was similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. ***Morrison v. Garraghty***, 239 F.3d 648, 654 (4th Cir. 2001). Once this showing is made, the reviewing court then proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. ***Id.*** In the context of prisoners, the Equal Protection Clause indisputably protects similarly situated prisoners from arbitrary racial discrimination. ***Id.*** However, a court's review of a prison's action is "tempered by the recognition that 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" ***Id.*** (citing ***O'Lone v. Estate of Shabazz***, 482 U.S. 342, 348 (1987)). These underlying considerations include "detergence of crime, rehabilitation of prisoners, and institutional security." ***O'Lone***, 482 U.S. at 348 (emphasis added). "In addressing this type of constitutional claim[,] courts must defer to the judgment of correctional officials unless

the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." **King v. Rubenstein**, — F.3d —, 2016 WL 3165598 at *4 (4th Cir. June 7, 2016) (citing **Florence v. Bd. of Chosen Freeholders of Cty. of Burlington**, — U.S. —, 132 S.Ct. 1510, 1513-1514 (2012)).

To state a valid equal protection claim, and thereby survive a motion for summary judgment, a given plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." **Williams v. Hanson**, 326 F.3d 569, 584 (4th Cir. 2003) (internal citations omitted). The plaintiff must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." **Cawford-El v. Britton**, 523 U.S. 574, 600 (1998). "Determining whether an invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." **Village of Arlington Heights v. Metropolitan Housing Development Corp.**, 429 U.S. 252, 266 (1977).

This Court has carefully reviewed the allegations set forth in the Complaint, the claims made in the various pleadings submitted by the plaintiff, and the evidence offered in support throughout. Upon review, plaintiff has clearly failed to present affirmative evidence that he was treated differently from other inmates assigned to the same job, and more importantly, that the actions of Officer Helms were the result of intentional or purposeful discrimination. See **Morrison**, 239 F.3d at 654. Instead, plaintiff has continuously repeated, without evidentiary support, his allegation that Officer Helms said he did not want to work with a black inmate and that his movement of plaintiff's work shift

was somehow the product of discriminatory intent. For example, in his objections, plaintiff states that "if, in fact, the plaintiff was in touch with his co-worker Torrence Gillis[,] he would have given plai[n]tiff an [affidavit]," which would "corroborate plaintiff's allegation" [Doc. 165 at 10-11]. However, that supporting affidavit is nowhere to be found in the pleadings.

Officer Helms, for his part, has articulated a valid, justifiable, and non-discriminatory reason for his decision to change plaintiff's shift: he became a potential security concern [Doc. 140-2]. Officer Helms states plaintiff had become too familiar with the staff, the workings of the corridor, and which officers were carrying specific keys [Id.]. By way of example, Officer Helms observed that plaintiff, "would let other inmates know that they had to go to certain officers or posts to ask for access to a locked area" [Id.]. He contends that the security of an institution can be jeopardized if inmates know which officers are carrying which keys, as inmates then know which officers to target if they want to effectuate an escape or otherwise gain access to a controlled area [Id.]. As noted by both Officer Helms and Captain Gilmore, it is a common and recognized practice to rotate inmates to different job assignments to prevent over-familiarity with certain areas and with the staff with whom they work [Id.; Doc. 140-3 at 2]. Therefore, Officer Helms asserts that the decision to reassign the plaintiff was based solely on these security concerns and had nothing to do with his race [Id.]. As noted in *King*, "in addressing this type of constitutional claim[,] courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." 2016 WL 3165598 at *4. Accordingly, this Court believes that Officer Helms' decision to switch the plaintiff's shift was a necessary and justified response to a problem

regarding prison security.

Additionally, Officer Helms contends that he has never treated inmates differently based on their race, given preferential treatment to white inmates, or stated that he did not want to work with black inmates [Id.]. He further acknowledges that while he hired two Caucasian inmates to replace plaintiff and his co-worker for the morning-watch detail, the sole reason for doing so was because they were the first two inmates to ask about the job [Id.]. Additionally, this evidence also shows that plaintiff was not singled out or otherwise discriminated against individually, as *all* inmates who hold prison jobs are subject to reassignment or removal based upon whether or not they present a potential security risk [Docs. 140-2 at 2, 140-3 at 2].

Furthermore, the evidence indicates that plaintiff was not removed from his job or fired, but was instead transferred to the same job during a different shift, namely from the "Morning Watch detail" to the "Day Watch detail" [Doc.140-2 at 2]. While plaintiff expressly denies that this is what occurred, he implicitly admits the same point:

> "Plaintiff objects to . . . the . . . incorrect reasoning that plaintiff was switched from morning-watch to day-watch detail. The plaintiff contend[s] that the correct fact is that he was fired from the morning-watch detail and placed on day-watch compound detail. . .."

[Doc. 165 at 7-8]. This appears to be an attempt by plaintiff to split hairs and improperly categorize Officer Helms' decision to transfer his job status from Morning Watch to Day Watch detail in order to form a basis for this action.

Finally, with respect to the issue of plaintiff's pay, plaintiff contends that Officer Helms retaliated against him by failing to pay him for the month of June 2012. Officer Helms, for his part, states that he did submit a pay sheet for the plaintiff for the month of

14

June [Doc. 145 at 3]. First, this Court notes that in his Complaint, plaintiff acknowledges that he was, in fact paid for the work that completed in June 2012 [Doc. 125-1 at 12]. While plaintiff does not address the issue of his compensation in his Objections, this Court has reviewed the matter, and it appears that the $96 in dispute for the month of June 2012 may not have been paid until September 2012 [Doc. 118-1 at 2]. However, there is no substantiated evidence that the delay was racially motivated. As noted by Karen McNair, the Regional Trust Fund Administrator in the Mid Atlantic Regional Office of the BOP, pay can be delayed to an inmate for a number of reasons, including administrative errors [Doc. 118 at 2]. Given that Officer Helms has offered a plausible explanation on the issue of compensation, and plaintiff has offered no compelling affirmative evidence on the matter, this Court finds that the plaintiff's claim that he was discriminated against in his prison work compensation is without merit.

Finally, in his Objections, plaintiff states that, ". . . Captain Gilmore told Unit Manager Mr. Lee Master to key Mr. Gillis and myself back into the computer for the morning watch corridor detail" [Doc. 165 at 11]. However, as noted in the R&R, Captain Gilmore filed a Declaration in which he stated:

> ". . . I deny that I reinstated Inmate Boyd to his job as morning-watch orderly because I 'found' that he 'was right' in his claims of racial discrimination. Supervisory officers are responsible for the hiring or removal of inmates in their departments. While these officers were free to consult with me regarding their decisions, it was not mandatory that they do so. I have no independent recollection of Inmate Boyd's work assignments or of being consulted prior to the time he was reassigned back to the morning-watch orderly detail. The decision to return him to his morning watch position was most likely made by the Morning Watch Supervisor working in November 2012."

[Doc. 140-3 at 2]. Plaintiff's protests to the contrary are, again, contrary to the evidence.

In conclusion, and for the reasons stated more fully above, this Court finds that plaintiff has not shown that he was treated differently from others with whom he was similarly situated, and not that he was treated unequally as the result of intentional or purposeful discrimination. *Morrison*, 239 F.3d at 654. He also has not "identified affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Cawford-El*, 523 U.S. at 600. Plaintiff has also failed to identify any genuine factual dispute regarding the essential issue of discriminatory intent. His Complaint rests solely upon bald, conclusory and unsubstantiated assertions, and to the extent they can be believed, do not rise to the level of discriminatory intent. There is no evidence cited by the plaintiff from which this Court might infer that the stated reason advanced by Officer Helms for the job reassignment was a pretext for discrimination. The record clearly establishes that the plaintiff's work re-assignment was undertaken in consideration of the institution's security needs, and not because of any discriminatory motive. Accordingly, as there is no genuine issue of material fact as to plaintiff's claim of racial discrimination against Officer Helms, and this Court now **GRANTS** Officer Helms' Motion for Summary Judgment on this issue.[5]

**B.** **Plaintiff has Failed to Exhaust his Administrative Remedies as to His Claim that Defendants Retaliated Against Him for Filing Administrative Complaints of Discrimination**:

---

[5] This Court notes that the R&R recommends that this Court deny with prejudice plaintiff's Complaint on this issue, as it fails to state a claim upon which relief can be granted as to Officer Helms, pursuant to Fed. R. Civ. P. 12(b)(6). However, as is demonstrated in this Court's analysis, upon viewing the evidence herein in a light most favorable to plaintiff, there is no genuine issue of material fact in dispute as to his claims against Officer Helms. *See* Fed. R. Civ. P. 56. As such, this Court declines to grant the Motion to Dismiss on this issue, and instead elects to grant Summary Judgment on the matter.

In addition to the allegations plaintiff has made against Officer Helms, he alleges that Terry O'Brien, Captain Gilley, Lt. Poissonier, Officer Osborne, Officer Price, Secretary Allen, Officer Hoskin, and Lt. Stauffer, also retaliated against him for filing administrative complaints [Doc. 125-1 at 14-28]. In pages 11-16 of his Objections, plaintiff generally contends that he, ". . . completely exhausted all remedies in regards to both claims 1 and 2 set forth in his complaint" [Doc. 165 at 11]. However, the vast majority of plaintiff's specific objections to this point are rambling, paragraph length sentences with little to no punctuation. Some of the sentences bounce between different two and three sub-issues in a single line. Regardless of the problematic language used by plaintiff, this Court will review the entirety of this section of the R&R under a *de novo* standard of review. Upon review, it is clear that plaintiff has failed to exhaust his administrative remedies with respect to his allegations of retaliation.

The PLRA mandates that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life . . .." **Porter v. Nussle**, 534 U.S. 516, 532 (2002). Furthermore, "exhaustion is mandatory, and unexhausted claims may not be litigated in court." **Jones v. Bock**, 549 U.S. 199, 211 (2007).

Pursuant to 28 C.F.R. § 542.10, *et seq.*, the BOP has established an Administrative Remedy Program through which an inmate may seek a formal review of an issue or complaint relating to his/her own confinement. If an inmate is unable to resolve his

complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal, using the appropriate form, to the Regional Director within 20 calendar days of the Warden's response. 28 C.F.R. § 542.15(a). If the inmate is not satisfied with the Regional Director's response, he/she may then file an appeal with the Office of General Counsel, located in the BOP's Central Office in Washington, D.C., using the appropriate forms. Id. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. Id.

As noted more thoroughly in the R&R, plaintiff filed two separate administrative complaints which related to this matter. The first, which the BOP labeled Administrative Remedy ID #711982, concerned his initial allegations against Officer Helms [Doc. 1-1 at 1-2]. As noted above and for the reasons more thoroughly outlined in the R&R, plaintiff took the necessary actions to ensure that he exhausted the requisite Administrative Remedy Program steps; accordingly, this Court has analyzed plaintiff's substantive claims against Officer Helms above [Doc. 163 at 9-14].

However, shortly after he filed the initial grievance against Officer Helms alone, plaintiff filed another grievance, which is delineated as Administrative Remedy ID #715801, wherein he set forth the retaliation claims against all defendants [Doc. 1-1 at 13]. There, plaintiff generally alleged that his complaint was "based upon the retaliation in violation of the Federal Constitution's First, Eighth and Fourteenth Amendments by USP Hazelton's

18

Officer Helms and co-workers" [Id.]. Because plaintiff solely used the phrase, "and his co-workers," instead of the names of Terry O'Brien, Captain Gilley, Lt. Poissonier, Officer Osborne, Officer Price, Secretary Allen, Officer Hoskin, and Lt. Stauffer, which he used in his Complaint in this matter, the BOP denied Administrative Remedy ID #715801 as repetitive, and refused to consider it on the merits [Doc. 1-1 at 17]. As noted in the R&R, the phrase "and his co-workers" is simply not enough to afford the requisite BOP administrators and staff notice that a complaint has been filed against them. Given that plaintiff was clearly familiar with the administrative remedy procedure and knew how to proceed, plaintiff has clearly not exhausted his administrative remedies as to any defendant other than Officer Helms. Given that "exhaustion is mandatory, and unexhausted claims may not be litigated in court," **Jones v. Bock**, 549 U.S. at 211, plaintiff's claims as to Terry O'Brien, Captain Gilley, Lt. Poissonier, Officer Osborne, Officer Price, Secretary Allen, Officer Hoskin, and Lt. Stauffer, must be denied without prejudice for failure to exhaust the requisite administrative remedies.

## CONCLUSION

Upon careful review of the record, this Court hereby **ADOPTS** the magistrate judge's Report and Recommendation **[Doc. 163]** for the reasons stated above. The plaintiff's Objections **[Doc. 165]** are **OVERRULED**. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment **[Doc. 139]** is **GRANTED**. Furthermore, as there is no genuine issue of material fact as to plaintiff's claim of racial discrimination against Officer Helms, and this Court now **GRANTS** Officer Helms' Motion for Summary Judgment on this issue and plaintiff's Amended Complaint **[Doc. 125-1]** against Officer Helms' on

19

those grounds is **DENIED WITH PREJUDICE**. Furthermore, plaintiff's claims against the remaining defendants and his claims against Officer Helms for retaliation are hereby **DENIED WITHOUT PREJUDICE** for failure to exhaust administrative remedies. Accordingly, this matter is **ORDERED STRICKEN** from the active docket of this Court, and the Clerk is hereby **DIRECTED** to enter judgment in favor of the defendants.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* plaintiff.

**DATED:** July 26, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE